**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

BRIANA KRAMBECK,

Plaintiff,

v. Case No. 8:24-cv-2102-TPB-NHA

UNUM LIFE INSURANCE COMPANY
OF AMERICA,

Defendant.
_______________________________________/

**ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

This matter is before the Court on "Plaintiff's Motion for Summary Judgment" and "Defendant's Motion for Summary Judgment on the Administrative Record." (Docs. 40; 41). Both parties filed responses in opposition, and both parties filed replies. (Docs. 45; 46; 47; 48). Upon review of the motions, responses, replies, court file, and record, the Court finds as follows:

**Background**

Plaintiff Brianna Krambeck alleges that Defendant Unum Life Insurance Company improperly terminated long-term disability benefit payments to her. Defendant denies that it acted improperly and alleges in its counterclaim that Plaintiff is liable to reimburse Defendant for a portion of the payments it has made, because Plaintiff received Social Security disability payments for the same condition.

Defendant is the claims administrator for the "Costco Employee Benefits Program-Long Term Disability Plan Benefits" (the "Plan"), an employee welfare benefit plan governed by the Employee Retirement and Income Security Act of 1974, as amended, 29 U.S.C. § 1001 *et seq*. ("ERISA").[1] The only Plan document discussed by the parties is a group insurance policy issued by Defendant to Costco. (Doc. 39-3).[2] The Court will therefore refer to provisions of the "Plan" or "policy" interchangeably.

Under the Plan, when an employee is disabled from performing her own job or a reasonable alternative, she may receive long-term disability benefits based on her inability to perform that job for a period of nine months. (Doc. 39-3 at 17, 24). After that initial period, the Plan provides for payment of additional, long-term disability benefits only if the employee is "unable to perform the duties of any gainful occupation for which [the employee is] reasonably fitted by education, training or experience." (*Id.*). In this context, a "gainful" occupation is one expected to provide an annual income that exceeds 80 percent of the employee's indexed

---

[1] Plaintiff alleges in her complaint that Plaintiff's employer, Costco, is the plan sponsor and the plan administrator (Doc. 1 at ¶ 7) and that Defendant is the claims administrator (Doc. 1 at ¶10). Defendant's answer admits these allegations (Doc. 32 at ¶¶ 7, 10) but in its summary judgment motion asserts that it is the "Plan Administrator." The Plan provides that Defendant is the Plan Administrator for purposes of determining claims and that the Plan Administrator for all other purposes is Costco's Benefits Committee. (Doc. 39-3 at 42-43). It appears undisputed that the Plan purports to confer discretionary authority on Defendant regarding benefit determinations, and that it is the proper defendant in this case. *See* (*id.* at 48); *Garren v. John Hancock Mut. Life Ins. Co.*, 114 F.3d 186, 187 (11th Cir. 1997) ("The proper party defendant in an action concerning ERISA benefits is the party that controls administration of the plan.").

[2] The policy provides that the Plan consists of the policy itself and a summary plan description, which, in turn, consists of a certificate of insurance coverage and provisions in an addendum to the policy. (Doc. 39-3 at 42).

monthly earnings if the employee is working, or 60 percent, if the employee is not working. (*Id*. at 38). The Plan gives Defendant the discretion to make determinations regarding the payment of long-term disability benefits. (*Id*. at 48).

Plaintiff Briana Krambeck worked as a "Major Sales Assistant" in an Omaha, Nebraska Costco store in May 2020, when she claims she became disabled and began taking medical leave. She claims she had contracted COVID-19 at that time and suffered from a number of different symptoms. Plaintiff initially received short-term disability benefits. She returned to work part time but, after testing positive for COVID-19, took additional medical leave in October 2020. Her treating physician, Dr. Angela Law, released Plaintiff to gradually return to work once she had been free of fever for 24 hours, allowing her to work four hours a day beginning on November 30, 2020, and to return to full time work by December 14, 2020.

In December 2020, however, Plaintiff continued to report symptoms she attributed to repeated COVID-19 infections – shortness of breath and dysphonia (hoarseness and difficulty speaking), along with other symptoms such as spinal pain and headaches. In addition to Dr. Law, Plaintiff was tested and treated by medical professionals in various specialty areas, including pulmonology and otolaryngology. She continued to work part time until May 2021.

In January 2021, Defendant approved the payment of long-term disability benefits to Plaintiff based on her inability to perform her own job. As noted, these types of benefits were available for a maximum of nine months, or until approximately October 2021, after which the Plan provided for payment of

continued long-term disability benefits only if Plaintiff was unable to engage in any "gainful occupation."

It appears undisputed that an inability to speak for more than 30 minutes a day would prevent Plaintiff from engaging in "any gainful occupation" and would qualify Plaintiff as disabled for purposes of receiving continued long-term disability benefits. In September 2021, Dr. Law responded in writing to questions from Defendant regarding Plaintiff's work capacity, indicating in her response that "Yes," Plaintiff could engage in full-time sedentary work, but stating that Plaintiff could only speak for 30 minutes a day and therefore would be unable to do a telephone job. (Doc. 39-2, at 119-21).

On November 5, 2021, Dr. Rosemary Szollas, an in-house physician with Defendant, spoke with Dr. Law by phone and a few days later wrote Dr. Law a letter confirming and summarizing their conversation. (*Id*. at 205). The stated purpose of the letter was to ensure that the phone conversation was accurately reflected. Dr. Szollas's summary indicated that, following their discussion, Dr. Law had agreed that Plaintiff could engage in a sedentary occupation on a full-time basis that required speaking "occasionally" – defined as speaking for up to 2.5 hours in an eight-hour day. The letter told Dr. Law, "[i]f you would like to revise any of the statements [in the summary], please write your comments directly on this letter or send a response under separate cover." It appears from the record that Dr. Law never objected or otherwise responded to the letter to indicate her disagreement with Dr. Szollas's summary of their conversation.

Based on Dr. Szollas's assessment and her call with Dr. Law, among other things, Defendant determined Plaintiff was not precluded from engaging in "any gainful occupation" and terminated Plaintiff's long-term disability benefits, notifying Plaintiff by letter on November 19, 2021. (*Id*. at 229-36). Plaintiff telephoned Defendant a few days later and expressed her disagreement. (*Id*. at 252).

Two weeks later, however, Dr. Law sent Defendant a revised version of her earlier, September 2021, response letter, changing her response as to whether Plaintiff could engage in sedentary work from "Yes" to "No," leaving intact her previous qualification that Plaintiff could not engage in work requiring that she speak more than 30 minutes, and adding that Plaintiff could not speak "more than a few minutes" per day. (*Id*. at 255-56). The response did not mention the conversation with Dr. Szollas or Dr. Szollas's November 8 letter. On December 28, 2021, Dr. Law sent another letter to Defendant again asserting that Plaintiff could not perform full time sedentary work due to shortness of breath and "difficulty talking for more than a few minutes." (*Id*. at 267-68).

Dr. Szollas reviewed the file again but reached the same conclusion. (*Id*. at 316-21). After another internal review (*id*. at 576-80), Defendant provided the file to an outside consultant, Dr. Anup Sanghvi, M.D., for review. In a report in March 2022, Dr. Sanghvi agreed with Dr. Szollas that Plaintiff was able to work, disagreeing with Dr. Law's view that Plaintiff was unable to speak to the extent required to meet the "occasional" speaking requirement. (*Id*. at 324-27). Dr.

Sanghvi reasoned that providers other than Dr. Law had not asserted any restrictions or limitations on Plaintiff's ability to work and that her inability to work was not supported by quantifiable clinical evidence, by the way her conditions were being managed, or by specific aspects of Plaintiff's presentation. Plaintiff appealed this determination, and Defendant provided the file to another outside consultant, Steven Winkel, D.O. Dr. Winkel similarly concluded that the medical evidence did not support Plaintiff's inability to work in a sedentary occupation with occasional speaking required. (*Id*. at 585-92).

Plaintiff filed this lawsuit alleging that she is permanently disabled and seeking recovery of long-term disability benefits she claims Defendant is required to pay as a result. Defendant counterclaimed to recover some of the benefits previously paid based on the fact that Plaintiff received disability benefits for the same condition from the Social Security Administration. Plaintiff and Defendant have moved for summary judgment on Plaintiff's claim for benefits and on Defendant's counterclaim to recover the alleged overpayments.

## **Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A properly supported motion for summary judgment is not defeated by the existence of a factual dispute. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986). Only the existence of a genuine issue of material fact will preclude summary judgment. *Id*.

The moving party bears the initial burden of showing that there are no genuine issues of material fact. *Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1260 (11th Cir. 2004). When the moving party has discharged its burden, the nonmoving party must then designate specific facts showing the existence of genuine issues of material fact. *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593-94 (11th Cir. 1995). If there is a conflict between the parties' allegations or evidence, the nonmoving party's evidence is presumed to be true and all reasonable inferences must be drawn in the nonmoving party's favor. *Shotz v. City of Plantation*, 344 F.3d 1161, 1164 (11th Cir. 2003).

Where the moving party will bear the burden of proof on an issue at trial, demonstrating the absence of a genuine issue of material fact requires the submission of credible evidence that, if not controverted at trial, would entitle the moving party to a directed verdict on that issue. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). Only if the moving party meets that burden is the non-moving party required to produce evidence in opposition. *Chanel, Inc. v. Italian Activewear of Fla. Inc.*, 931 F.2d 1472, 1477 (11th Cir. 1991).

The standard for cross-motions for summary judgment is not different from the standard applied when only one party moves for summary judgment. *Am. Bankers Ins. Grp. v. United States*, 408 F.3d 1328, 1331 (11th Cir. 2005). The Court must consider each motion separately, resolving all reasonable inferences against the party whose motion is under consideration. *Id.* "Cross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment

unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed." *United States v. Oakley*, 744 F.2d 1553, 1555 (11th Cir. 1984) (quoting *Bricklayers Int'l Union, Local 15 v. Stuart Plastering Co.*, 512 F.2d 1017 (5th Cir. 1975)).

## Analysis

### *Plaintiff's Claim for Long-Term Disability Benefits*

ERISA Standards of Review

In *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989), the Supreme Court held that judicial review under ERISA of benefits decisions by plan administrators is *de novo* unless the plan in question granted the administrator discretion with respect to such decisions, in which case review would be limited to whether the administrator's decision constituted an abuse of discretion, a standard the Eleventh Circuit has equated with "arbitrary and capricious." *Id.* at 115; *see Brown v. Blue Cross & Blue Shield of Alabama, Inc.*, 898 F.2d 1556, 1558 n.1 (11th Cir. 1990).

The Eleventh Circuit thereafter applied *Firestone* in various contexts, including situations where the administrator had a conflict of interest, and developed a multi-step framework or process for courts to use in deciding the issues presented by these cases. The process has been articulated as follows:

(1) Apply the *de novo* standard to determine whether the claim administrator's benefits-denial decision is "wrong" (i.e., the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.

(2) If the administrator's decision is in fact "*de novo* wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.

(3) If the administrator's decision is "*de novo* wrong" and he was vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).

(4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.

(5) If there is no conflict, then end the inquiry and affirm the decision.

(6) If there is a conflict, the conflict should merely be a factor for the court to take into account when determining whether an administrator's decision was arbitrary and capricious.

*Blankenship v. Metropolitan Life Ins. Co.*, 644 F.3d 1350, 1355 (11th Cir. 2011); *Williams v. BellSouth Telecomms., Inc.*, 373 F.3d 1132, 1137 (11th Cir. 2004). For purposes of *de novo* review, Plaintiff bears the burden of establishing that she was disabled under the terms of the Plan. *Glazer v. Reliance Standard Life Ins. Co.*, 524 F.3d 1241, 1247 (11th Cir. 2008). Courts in this Circuit, including this Court, have followed this framework in reviewing benefits determinations. *See Johnson v. Reliance Standard Life Ins. Co.*, 159 F.4th 1304, 1310 (11th Cir. 2025) (following precedent applying this framework but noting that the Eleventh Circuit "stand[s] alone" in this approach and that, "candidly . . . this six-step dance is likely unnecessarily complex (and may even obscure the lawful result in certain cases)"). The Court therefore proceeds to the first step in the analysis.

*"De Novo* Review" or "*De Novo* Wrong"?

As formulated above, in this step, the Court is to "apply the *de novo* standard to determine whether the claim administrator's benefits-denial decision is 'wrong'" (defined as the court disagreeing with the administrator's decision). The *Williams* formulation also states that, if the court concludes the decision was not "wrong," then the analysis ends, and the court affirms the administrator's decision. It further appears that this initial *de novo* determination is limited to the record before the administrator at the time the benefits determination was made. *See, e.g., Ray v. Sun Life & Health Ins. Co.*, 443 F. App'x 529, 533 (11th Cir. 2011); *Glazer*, 524 F.3d at 1247.

A question is immediately presented as to the interplay between the first step and the usual standard applied to motions for summary judgment, at least in cases like this one that involve primarily factual determinations by the administrator based on conflicting evidence. District courts in this Circuit, including this Court, have generally stated that in ERISA benefits cases, the ordinary summary judgment standards do not apply, offering the rationale that, in these types of cases, a district court acts "more [as] an appellate tribunal than a trial court." *See, e.g.*, *Boatwright v. Aetna Life Ins. Co.*, 599 F. Supp. 3d 1218 (M.D. Fla. 2022) (Barber, J.); *Graham v. Life Ins. Co. of North America*, 222 F. Supp. 3d 1129, 1136 (N.D. Ga. 2016).

While this observation appears unexceptional in cases employing an arbitrary and capricious standard, some of the cases appear to dispense with the

traditional summary judgment standard even in situations where the administrator has no discretion under the plan and the court's review is therefore under the *de novo* standard, rather than arbitrary and capricious. *See, e.g.*, *Cusumano v. Cont'l Cas. Co.*, No. 6:07-cv-141-0RL-22KRS, 2008 WL 1711405, at *7 (M.D. Fla. Apr. 10, 2008) (Conway, J.) (stating that, while "[t]here may indeed be unresolved factual issues evident in the administrative record . . . *unless the Administrator's decision was wrong*, these issues will not preclude summary judgment as they normally would") (emphasis supplied).[3]

This approach basically appears to have the Court, at the first step in the six-part framework, ignore the usual summary judgment focus on issues of fact for trial and instead conduct what amounts to a bench trial on the papers, weighing the same evidence that was before the administrator, to reach a conclusion as to whether the administrator was wrong or "correct," with a "correct" verdict ending the case in the administrator's favor.

Both Plaintiff and Defendant in this case seem to have adopted this approach implicitly. Both sides agree on application of the six-step framework outlined above, including the initial *de novo* review to determine whether the administrator's decision was "wrong." Both sides appear to ask the Court to decide the matter on

[3] *See also, e.g., Schwade v. Total Plastics, Inc.*, 837 F. Supp. 2d 1255, 1263 (M.D. Fla. 2011) (Merryday, J.) (holding that "the district court [ ] determin[es] *de novo* whether the administrator's decision was wrong rather than whether there are questions of material fact and whether the parties are entitled to judgment as a matter of law") (quoting *Murray v. Hartford Life & Acc. Ins. Co.,* 623 F. Supp. 2d 1341, 1349 (M.D. Fla. 2009) (Conway, J.)), *aff'd sub nom. Florida Health Scis. Ctr., Inc. v. Total Plastics*, Inc., 496 F. App'x 6 (11th Cir. 2012).

the record presented by the motions.[4] Plaintiff's motion for summary judgment expressly asks the Court to weigh the opinions from different medical professionals in the record and find that Defendant's benefits decision was wrong. Neither side has referred to the usual summary judgment standard or argued, even in the alternative, that genuine issues of material fact do or do not exist. The briefing in this case, then, has been inconsistent with the usual summary judgment procedure but arguably consistent with the approach outlined above.

It is less than clear to the Court, however, that this is the correct approach for *de novo* review in an ERISA benefits case, at least in a case like this one where the primary issue involves the administrator's factual determination regarding the employee's disability and the administrator lacks discretion (as the Court concludes below is the case here). For one thing, some language in the cases suggests that the approach is limited to arbitrary and capricious review, and, indeed, Defendant acknowledges this limitation in its summary judgment motion. *See* (Doc. 41 at 17) ("*Under the arbitrary and capricious standard*, the conventional test for summary judgment does not apply") (emphasis supplied) (citing *Crume v. Metro. Life Ins. Co.*, 417 F. Supp. 2d 1258, 1273 (M.D. Fla. 2006)).

More importantly, ignoring the existence of genuine issues of material fact in the context of *de novo* review and summary judgment would be inconsistent with Eleventh Circuit precedent that applies the traditional summary judgment standard in these circumstances. In *Kirwan v. Marriott Corp.*, 10 F.3d 784 (11th

---

[4] Plaintiff also asks the Court to remand the case to Defendant for reconsideration in light of the Social Security Administration determination, a point discussed below.

Cir. 1994), which like this case involved a denial of long-term disability benefits, the district court had granted summary judgment for the insurer applying the arbitrary and capricious standard. *Id*. at 787-88. The Eleventh Circuit held that was erroneous, because the plan at issue did not expressly grant discretion to the insurer. *Id*. at 789. Therefore, the Court of Appeals held, the *de novo* standard applied. *Id*. Further, such a *de novo* review by a court is not limited to the record before the administrator when it made its decision. *Id*. The defendant argued that the summary judgment in its favor should nevertheless be affirmed on *de novo* review. *Id*. The Eleventh Circuit rejected this argument, holding that evidence from the plaintiff, the plaintiff's physician, and medical records before the court created an issue of fact on whether the plaintiff was disabled. *Id*.

Similarly in *Shaw v. Connecticut General Life Ins. Co.*, 353 F.3d 1276 (11th Cir. 2003), the Eleventh Circuit again applied the traditional summary judgment standard to *de novo* review in an ERISA benefits case similar to this one. The Court of Appeals held that the district court in that case properly applied the *de novo* standard of review but reversed the lower court's summary judgment for the plaintiff, holding that conflicting opinions from physicians created genuine issues of fact as to the plaintiff's disability, resolution of which required a bench trial. *Id*. at 1286-87.

To the extent that subsequent Eleventh Circuit case law conflicts with *Shaw* and *Kirwan*, the latter decisions control this case. *Shaw and Kirwan*, in the Court's view, are not inconsistent with earlier Eleventh Circuit case law, and they have not

been overruled by an *en banc* decision of the Eleventh Circuit or abrogated by the Supreme Court. As such, they are binding precedent. *See, e.g.*, *Harris v. Lincoln Nat'l Life Ins. Co.*, 42 F.4th 1292, 1296 (11th Cir. 2022) (discussing the prior panel precedent rule, and holding that, to the extent the multi-step approach created in *Williams v. Bellsouth* conflicted with *Kirwan*, *Kirwan* would control).[5]

---

[5] The apparent confusion in the case law seems to have been generated by the use of "*de novo*" in the cases in two different senses: first, to refer to an initial determination, as part of arbitrary and capricious review, as to whether an administrator's discretionary interpretation of the terms of the plan was legally correct; and, second, to refer to the ultimate standard of review applied by the Court in cases where, as here, the administrator lacks discretionary authority. *See Hawkins v. Arctic Slope Reg'l Corp.*, 344 F. Supp. 2d 1331, 1335 (M.D. Fla. 2002) (noting that "[t]he use of the term '*de novo'* by the Eleventh Circuit at this step of the analysis is somewhat confusing[,]" and that the term may have different meanings in different contexts); *see also Harvey v. Standard Ins. Co.*, 850 F. Supp. 2d 1269, 1281 (N.D. Ala. 2012) ("As other courts have noted, the *de novo* review contemplated in the first step of Eleventh Circuit's ERISA analysis is "somewhat confusing" because it differs from the *de novo* standard of review applied in other contexts."), *aff'd,* 503 F. App'x 845 (11th Cir. 2013); *Anderson v. Unum Life Ins. Co. of Am.*, 414 F. Supp. 2d 1079, 1103 (M.D. Ala. 2006) (agreeing with *Hawkins* and explaining that reconciling the Eleventh Circuit's opinions requires assuming that "*de novo*" is being used in different ways); *Parness v. Metro. Life Ins. Co.*, 291 F. Supp. 2d 1347, 1356-57 (S.D. Fla. 2003) (distinguishing "the *de novo* review applied by a court when the plan administrator is not vested with discretionary authority, under which the Court may consider evidence outside the administrative record, and the *de novo* review applied to the legal interpretation of disputed terms in the plan documents during the first step of the heightened arbitrary and capricious standard of review"). It appears to the Court that the confusion may have arisen when language in *Brown v. Blue Cross & Blue Shield of Ala.*, 898 F.2d 1556, 1566-67 & n.12, 1570 (11th Cir. 1990), and *HCA Health Services of Georgia, Inc. v. Employers Health Ins. Co.*, 240 F.3d 982 (11th Cir. 2001), directing courts to determine "*de novo*" whether an administrator's *interpretation* of the plan was legally correct as part of arbitrary and capricious review was applied in *Williams* outside that limited context. *See Williams*, 373 F.3d at 1138 & n.6 (listing a *de novo* determination by the court as to "whether the claim administrator's benefits-denial decision [was] 'wrong' (*i.e.,* the court disagrees with the administrator's decision)" as the first step in a process for "reviewing virtually *all* ERISA -plan benefit denials" whether based on plan interpretation or factual determinations). The Court, however, will not add to the length of this order, and potentially add to the existing confusion, by attempting to untangle this knot any further.

Under the traditional summary judgment approach required by *Kirwan* and *Shaw*, the evidence described above as to the conflicting opinions of Plaintiff's treating physician Dr. Law, Defendant's physician Dr. Szollas, and Defendant's consultants Drs. Sanghvi and Winkel, as well as issues of credibility related to the conversation and correspondence between Dr. Szollas and Dr. Law would ordinarily present classic issues of fact for trial. In light of the Eleventh Circuit's decisions in *Shaw* and *Kirwan*, the lack of clarity in the case law, and the lack of express consent by either side to a "bench trial on the papers," the Court declines to weigh the conflicting evidence and grant judgment for either side at this point. *See Ianniello v. Hartford Life & Acc. Ins. Co.*, No. CV 10-370 SJF ARL, 2011 WL 7139243, at *14 (E.D.N.Y. Aug. 16, 2011), *report and recommendation adopted*, 2012 WL 314872 (E.D.N.Y. Feb. 1, 2012), *aff'd*, 508 F. App'x 17 (2d Cir. 2013) (noting that it may be appropriate to conduct a "bench trial on the papers" in ERISA cases where the parties have consented to such a procedure, but not otherwise).

Rather, in an abundance of caution, the Court will deny the parties' cross-motions for summary judgment as to Plaintiff's claim for long-term disability benefits. The Court by separate notice will schedule a bench trial at which time the parties may present their evidence. The Court will then reach its *de novo* determination as to Plaintiff's claim on a complete record.[6] This ruling, however, is

---

[6] Plaintiff argues that Defendant should have obtained and considered Social Security Administration ("SSA") records relating to the SSA's decision to provide Plaintiff with long-term disability benefits, and its failure to do so requires the Court to remand this dispute to Defendant for reconsideration. However, the cases on which Plaintiff relies, *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008), and *Melech v. Life Ins. Co. of N. Am.*, 739 F.2d 663 (11th Cir. 2014), are distinguishable. Here, the SSA award to Plaintiff of long-term disability

without prejudice to the parties' jointly agreeing to ask the Court to adopt an alternative procedure, as set forth at the end of this Order.

Administrator Discretion

Unless the Court determines the Plan affords the administrator discretion with respect to benefits decisions, judicial review of Defendant's decision will be limited to the *de novo review* described above, and the issue of whether Defendant acted reasonably is irrelevant. There is no dispute that the terms of the Plan itself expressly grant Defendant discretion with respect to benefits determinations. Plaintiff, however, argues that the Plan is by its terms governed by the law of the State of Washington, and that Washington by regulation prohibits disability policies from granting fiduciaries discretion in the determination of benefits. *See* Wash. Admin. Code § 284-96-012.

Defendant does not challenge Plaintiff's contention that, if the statute applies, the provision for administrator discretion is inapplicable. Defendant argues, however, that the effective date of the policy was January 1, 2001. The Washington regulatory ban on discretionary clauses in disability policies did not

---

benefits came long after Defendant's determination of Plaintiff's administrative appeal, and Plaintiff did not notify Defendant of the SSA award until long after that. Accordingly, Plaintiff's argument for remand for administrative reconsideration is rejected. *See Nunnelly v. Life Ins. Co. of N. Am.*, No. 21-12537, 2022 WL 1640790 (11th Cir. May 24, 2022) (holding that district court properly declined to remand dispute for reconsideration where SSA rendered its award sixteen months after the administrative appeal process concluded). For the reasons discussed herein, the Court will review the denial of benefits *de novo*. In this *de novo* review, the Court is not limited to the evidence in the administrative record. *See, e.g., Harris v. Lincoln Nat'l Life Ins. Co.*, 42 F.4th 1292, 1295-97 (11th Cir. 2022). This ruling is therefore without prejudice to Plaintiff ability to seek to introduce materials relating to the SSA determination at trial. The Court by this Order does not decide whether such evidence will be admitted or considered.

take effect until 2009, almost nine years later. The regulation does not provide that it is retroactive or that it applies to plans or policies already in effect. Accordingly, Defendant argues, the ban on discretion cannot be applied retroactively to foreclose Defendant's discretion under the Plan.

Plaintiff does not argue that retroactive application of the regulatory ban would be proper but argues instead that its application here would not be retroactive. According to Plaintiff, the policy in existence at the time Plaintiff allegedly became disabled, and the only policy document in the record, is contained in an amendment to the original 2001 policy issued on January 1, 2020. According to Plaintiff, the amendment replaced the entire policy and, although the original policy dated back to 2001, the effective date of the specific policy at issue here was therefore 2020, at which point the Washington regulation had been in effect for more than a decade. Plaintiff argues the application of the Washington regulation to the policy would therefore not be retroactive.

Defendant's briefing on the cross-motions does not address this issue. Plaintiff's contention regarding the effective date of the relevant policy appears to be correct. The 2020 policy amendment, *see* (Doc. 39-3 at 1), stated that the amendment is part of the Costco group policy, that "[t]he entire policy is replaced by the policy attached to this amendment," and that "[t]he effective date of these changes is January 1, 2020" and will "only apply to disabilities which start on or after the effective date." The Court therefore concludes that the policy at issue in this case is subject to the Washington regulation banning discretion in the

administration of disability policies, that Defendant therefore lacked discretion regarding benefits determinations, and the *de novo* standard of review applies. *See, e.g.*, *Kaminski v. UNUM Life Ins. Co. of Am.*, 517 F. Supp. 3d 825, 855 (D. Minn. 2021) (applying *de novo* standard where policy amendment, after effective date of Minnesota statute banning discretionary provisions, replaced entire policy); *Granger v. Life Ins. Co.*, No. 6:14-cv-1820-Orl-41DAB, 2016 WL 2851434, at *10 (M.D. Fla. Mar. 28, 2016) (applying state law ban on discretionary provisions in insurance policies and concluding that the court's "ERISA inquiry will be limited to determining if Defendant's decision to deny benefits was *de novo* wrong.").

***Defendant's Counterclaim to Recover Overpayments***

Defendant's counterclaim seeks to recover portions of long-term disability benefits paid to Plaintiff, based on Plaintiff's receipt in December 2022 of long-term disability benefits from the Social Security Administration, reflecting amounts to which the SSA determined Plaintiff was entitled retroactive to May 2021, amounting to over $24,000.

Defendant can seek equitable relief on its counterclaim against Plaintiff under § 502(a)(3) of ERISA, but not legal relief. *Montanile v. Bd. of Trustees of Nat. Elevator Indus. Health Benefit Plan*, 577 U.S. 136, 142 (2016). In this context, relief is equitable and therefore permissible when it seeks to reach a specific fund or property in the other party's possession rather than seeking recovery from the other party's general assets. *Id.* at 144-46. No such specific fund exists when the other party has dissipated the funds or property it received. *Id.*

As for payments already received by Plaintiff, her declaration asserts that any funds from Defendant and from the SSA have been spent and are not traceable to identifiable assets remaining in Plaintiff's possession. Defendant provides no contrary evidence nor any argument as to why Plaintiff's evidence does not foreclose its ability to seek equitable relief. Defendant has not created an issue of fact on the existence of a specific fund from which it is entitled to equitable relief. Therefore, Defendant's motion for summary judgment on its counterclaim is denied, and Plaintiff's motion for summary judgment in her favor on the counterclaim is granted, to the extent the counterclaim seeks to recover or obtain reimbursement based on payments Plaintiff has already received.

To the extent Defendant's counterclaim addresses payments Plaintiff may receive in the future, if the Court determines that Defendant has no obligation to pay further benefits, this issue will be rendered moot. The Court therefore defers ruling on this issue until it determines at trial whether Defendant is obligated to pay Plaintiff long-term disability benefits, and each side's motion for summary judgment is denied as to this issue. To the extent the parties believe that the evidence at trial will include evidence relevant to the counterclaim, they may address that with the Court in pre-trial submissions at the appropriate time.

## **Conclusion**

As set forth above, the cross-motions for summary judgment are denied with respect to Plaintiff's claim for long-term disability benefits. The Court will schedule a bench trial in which it will hear evidence and decide the matter *de novo*. As noted

above, however, this ruling is without prejudice to the parties' jointly agreeing to ask the Court to adopt an alternative procedure, such as expressly agreeing to submit the case to the Court for decision on the merits on the existing record evidence, or on the existing record supplemented by additional evidence, such as documents or deposition testimony.

If the parties choose to pursue this or another alternative to a bench trial, they are directed to file, within 14 days of the date of this Order, a *joint* submission indicating their agreement and describing the specific procedures and standards they wish the Court to follow, including the scope of evidence to be considered. To the extent the parties do not agree on one or more issues, they should explain their disagreement in their submission.

With respect to Defendant's counterclaim, Plaintiff's motion for summary judgment in her favor is granted to the extent the counterclaim seeks to recover or obtain reimbursement based on payments Plaintiff has received. Defendant's motion for summary judgment is denied. If the Court determines that Defendant will be required to make long-term disability payments in the future, it will address whether it may withhold a portion of those benefits or be entitled to reimbursement based on Plaintiff's receipt of Social Security disability payments.

Accordingly, it is hereby

**ORDERED**, **ADJUDGED**, and **DECREED**:

(1) "Plaintiff's Motion for Summary Judgment" (Doc. 40) is hereby **GRANTED IN PART** as to Defendant's counterclaim but otherwise **DENIED** as set forth herein.

(2) "Defendant's Motion for Summary Judgment on the Administrative Record." (Doc. 41) is hereby **DENIED.**

The Court by separate notice will schedule the case for a bench trial unless the parties file a joint submission agreeing to an alternative approach within 14 days of the date of this Order, as described herein.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 30th day of September, 2026.



TOM BARBER
UNITED STATES DISTRICT JUDGE